And please take care of yourselves. All right. Bye bye. We're going to go on now to the next case, and that is number five. I will wait for OK, we did wait. OK, this is case 21-14-81. It is United States v. Hernandez, and it's Hi, Mr. Hillis, how are you and how are you, Mr. Wood? You're both well. See that? OK. All right, Mr. Hillis, you better unmute yourself because we really want to hear you. So, Judge, I hope I am on mute. Can you hear me all right? Yes. Now we can. Very good. All right. May it please the court. Mr. Wood, my name is Daniel Hillis, Federal Public Defender's Office. I represent Mr. Hernandez on this case. It turns out the second restitution case of the day for this court. And in this case, we have a little bit more unusual situation than I've seen before in that the government didn't produce any evidence to establish a victim loss here. The only time that restitution was mentioned prior to the sentencing hearing was in the PSR, where the government advanced that it would like to get $10,000 in loss for each victim. But it tended no evidence to support that. Mr. Hillis, can you can you talk about why that matters? Why does it matter? That happens all the time in pre-sentence reports where the court receives a pre-sentence report. There's no objection to paragraphs in the pre-sentence report. The court if the court accepts the pre-sentence report. And by the way, it especially happens when the defendant does not want the court to focus on a particular issue such as this one. $10,000 restitution for these individual victims could be seen as extraordinarily light. And should your should your client have objected to these issues? The court may have said, you know what? Why don't we pause on restitution? Let's sentence Mr. Hernandez to a lengthy prison term based on what he admitted his plea hearing. And then let's have a restitution hearing down the road where perhaps the plaintiffs could prove a lot more in restitution that Mr. Hernandez is probably never going to pay. And that may be why they submitted to $10,000. And then you've got the second issue where I think we go even further than that, where Mr. Hernandez, his lawyer, affirmatively says, I have no objection to amending the judgment to add $10,000 for these individuals. So how is how are those two things not waiver under Mansfield? And in all the cases that precede Mansfield. And I want to add one more because. Does your client realize that it's a possibility that if we do remand, it could be an awful lot more? Sure. I'll take him in reverse order if that's OK with the court. So is it possible that it's more? I wouldn't see how under Noble and West's recent affirmation to rule that the government doesn't get a second bite of the apple. The Gibbs case was recently decided. And so that's drug quantity. But nevertheless, the principle remains when the government fails to present its burden of bills to meet its burden of proof in the production of evidence. The government's limited then to the record and cannot expand it in the event of a remand. So I don't think there's a real possibility here under the case law for the amount to be larger. And before you move on, Mr. Hillis, do we have an issue there with our Sumner case, though, which says if if if the defendant forfeited the issue at resentencing, and I know I'm changing the waiver question, but I'm dealing with what you're talking about right now, that if the defendant forfeited the issue, then the government isn't held to that wise standard on remand. If the government had made that argument, Judge, I would be more concerned about how it plays out. But it hasn't made that argument either. So I would say that, no, the Noble and West line of cases are still applicable because the government knew all along it had a burden to meet and it chose not to. It could be limited just to the three thousand dollar per victim. But it didn't even ask for that. And so here, like in the event where somebody isn't awarded the special assessment at one hundred dollars, which is statutory, there's an equivalent at least of the three thousand dollar award here under the statute that said would be the minimum. The government didn't prove that either, didn't ask for that. And so I think that we are in a different set of circumstances than that. And I will now, if possible, move over to the effort to analogize this case to Mansfield. And so we pointed out in our briefs that Mansfield is supported in the PSR by record evidence. The probation officer prepares and assembles showing a record of arrest. And it was something there that the court said somebody should oppose because of the record evidence aspect of it. Here, there isn't. There's just the government asking for something that it wants as a penalty, much less if it asked for a life sentence and didn't prove it. The court wouldn't give it here. The government says it's going to ask for ten thousand dollars. I think the court would expect that the government's going to come forward. It never did. Record entry 172 is the government's sentencing memo. It doesn't mention anything about restitution. There is no proof. There's no victim impact letters that ask for restitution. So I don't see how this case to be in that correctly analogized to Mansfield, much less the Sawyer case that involved a jury instruction issue staples, which involves drug quantity or any case that talks about criminal history. So I don't see that there is any kinship between those waiver cases in this case. What's missing here? I'm having a real problem with that because he even assumed restitution payments by the argument that 30 years of working in the prison would be sufficient for him to pay restitution. It would not have been, of course, but OK. And he didn't check. He didn't check. And the PSR anticipated a restitution amount of ten thousand dollars. He's so accountable. What I didn't mean to interrupt, but not to push back too much. But the the PSR did not contemplate and argue ten thousand dollars restitution merely signaled what the government said. It would ask if there was proof in there. I think it would be fair to say that PSR contemplated a certain restitution. Now, we would have then the government's obligation to come forward with any sort of proof that would be required under 2259. And that would be medical evidence of services, provided therapy, rehab, loss of income, attorney's fees. These are all things that the victims could ask for, but they needed to. And the government didn't do that. Well, how do we deal with the fact that when the government moved, as I recall, to amend the judgment to add restitution for several more victims who were missing? Hernandez affirmatively stated that he had no objection. I mean, time after time, it looks to me like he affirmatively assented to restitution. Sure. And look, he made a strategic, you know, somebody made a strategic decision not to raise restitution. Well, he didn't have any assets in any of it. Right. Right. Right. And it allowed, you know, acquiescing to restitution allows him or allowed him, I should say, to, you know, to focus all of his argument on the length of his prison term instead. I mean, you know, you don't nickel and dime because it looks tone deaf. Judge, you know, you know, Judge Kirsch noted, I mean. Yeah. Yes. If I may, though, judge, the statute provides what are the compensable losses and therefore delineates the sort of things that we would expect somebody to provide evidence of in support of a proof of recovery, a compensable loss. That didn't happen here. People refer to anxiety, but they did not establish a compensable loss. They never offered a figure. If there's a practice in that court to set $10,000, prosecutor might say every victim will say $10,000. There's a problem with that. If the amount $10,000 doesn't capture the actual loss, say it's too high. Under Zachary, the case law in that instance says there's a due process right to a defendant not to pay restitution more than what is owed. So the defendant only owed $5,000 in restitution because the victim didn't intend to get any sort of treatment, therapy, et cetera. Then even if Judge Kirsch is right to say these amounts could be far higher, if the proof is only $5,000 to say that they could have been higher and given $10,000 doesn't take away what is required here under the law. Under the law, the government has a burden of proof. And also the district court is supposed to make specific findings of loss and demonstrate its reason. That never happened. We have a rubber stamping. Let me ask you about that. Are all 11 victims entitled to restitution under 2259? It looks like one, victims one, four, five and six were actually named in the relevant counts, but victims 13, 17 and 20 aren't mentioned in the PSR. So if we were to remand the case, should it be limited to should we limit the calculation of restitution to just some victims? And if so, which ones? It would be for the victims that the government established a legal and factual basis for recap. And you are right that the PSR isn't very well developed in that regard. I fully understand that the big effort here was to limit the amount of sentencing exposure by way of imprisonment. But when the government is asking for life and the judge actually gives 75 years imprisonment to a 29 year old man, there's no reason not to go for broke. There's no strategic reason to sit on your hands or keep your mouth shut, much less to agree after sentencing occurred in the 75 years is imposed. What is the strategic reason to keep silent or hymies hymies such that we can say silence is the equivalent of consent? Mr. Ellis, you're not arguing you're not arguing ineffective assistance to counsel on this appeal, right? Judge, all I'm saying is that under hymies hymies, since you do not argue ineffective assistance of counsel on appeal because it risks waiving. Right. Right. Because later, that may be for another day. But your your client's lawyer said, I do not object. I do not. It could not be a stronger affirmance with respect to those three victims than I do not object. Yes, but there is case law that says silence or even an affirmative statement like that in the light of the possibility, a huge looming possibility here of deficient performance by agreeing to tack on $30,000 in loss under hymies hymies, which does refer to defective representation as a standard. Right. But you know, I'm not. But that's not an issue here. That that'll be for another day. No, we at least have to broach the subject of deficient performance because hymies hymies says that is a measurement in determining whether there's weight. So allowing for the prospect of a later claim of ineffective assistance of counsel the measure by way of a waiver standard here in this case, we do have to look to whether or not they're deficient performance. And I do not see a strategic reason in light of a 75 year sentence already imposed to now not poke the bear a little bit and try to get that restitution amount dialed down and say, no, we're good at 80,000. If that's correct now, we're not agreeing to tack on $30,000 for no benefit to my client. No disrespect to defense counsel. It was a very fine lawyer. But this is not something that speaks of any strategic decision making here. And with that, I have no time left to rebuttal. But I think, you know, I'm going to give it to you. I was hoping. OK. OK, just. Oh, my goodness. Mr. Wood, your honor, may it please the court on the waiver subject, if not Mansfield, then Lewis certainly speaks to similar circumstances in the sense that it wasn't evidence, but proposed supervised release conditions in the PSR that were not objected to. And this court treated that as waiver, underscoring the idea that parties raise what they raise for sentencing prior to the fact. And that is only fair to the district court and process. And on that note, although restitution isn't tied directly to the victims named in the indictment, there is a reason that some of the victims were added later. They were added prior to sentencing in the sealed notification of victims entitled the restitution. All the victims that have been ordered restitution in this case were in that notification. And there's a reason. So that is that because of the tradecraft Mr. Hernandez Hernandez used, it became very difficult even after the investigation proceeded to find out who his victims were. And he received acceptance of responsibility credit because he provided a lot of assistance during the petition to plead and plead and plea process to the government. He didn't provide assistance vis-a-vis anyone else, but he helped the FBI identify his own victims. But that still was a protracted process. Shortly before sentencing, the government was able to identify three additional victims, added them to this notice. And then, of course, they spoke at the sentencing or otherwise provided letters, but then were not included in the order. And that's what the court noticed. And the court contacted the government and said, this is mandatory. There's an there's clearly an error here. Are you going to move to amend? And at that point, the government attorney contacted Mr. Hernandez's attorney, who said no objection. So that's how the addition of the last three victims happened. It's to some degree explains the government's neglect in not mentioning them at sentencing, although they were there, they were present. But it doesn't excuse the complete lack of evidence. And, you know, the intention of the second portion of the government's brief here is to express an error confession in the sense that there's no evidence for these things. But the broader point here is that in the government's view, that happened because Mr. Hernandez waived these claims and he did so throughout. He was on notice of how all this would play out. Appellate records don't naturally include communications between attorneys. And I think there's good reasons for that. And I'm not one to supplement records with communications between attorneys. But this was waiver. And the record we have bears that out. He was on notice of the government's proposed amount, which was a round figure. It doesn't look like it's a product of accounting calculations for compensable losses. I understand that. But he knew what it was going to be. He made an argument at sentencing that that seemed to assume that that's what it was going to be. And the strategic reasons for that, I think they make a lot of sense. As Judge Rovner, as you said, it would be tone deaf to try to whittle away at these restitution amounts when not only was Judge Pratt aware of Mr. Hernandez's crimes in great detail as she prepared for that sentencing hearing. But then this was an all day hearing. This took, you know, something like 930 to 530, six o'clock. Those victims spoke for hours about what he did. And then to follow that up, as Mr. Hill has said, we're talking about a really good defense attorney here who's now a judge to follow that up by responding to Judge Pratt and saying, well, yeah, that was pretty bad and they deserve treatment. And, you know, to give a really nice rhetorical acknowledgment of the suffering that they had undergone and then to say, but of course, we think it should be less. They deserve less. That would not have been effective advocacy. Mr. Hill is his point about the difference between an effective life sentence and a life sentence is well taken. I get it. That's from a balancing standpoint. That's fair. But the broader point is that strategically it would have been. It would have been a stretch to then make that a big part of the defense attorneys, the defense argument, I think, especially because it didn't. From everything in the record, including Mr. Hernandez's elocution, nothing seemed in the way that he approached pretrial. It didn't seem as though the matter of restitution was important to him. And then I'll also add in the subject of remand there. Sumner, we view this as a summer case, but the government's position in this case is very fact bound and very delicate in the sense that the last thing these victims want is a substantial evidentiary hearing that would require them to revisit any of this. So I didn't raise Sumner because that's the they have communicated quite clearly that they don't want anything to do with this case anymore. And so we didn't want to advance an argument that would require that. If that means that we're stuck at 3000, you know, that could legally be what that means. But our view is that the broader force of this case is that waiver applies and that the 10000 should apply across the board, especially read into the record through the express waiver of 10000 amount at the back end. I'd like to ask you about all those other victims. The the FBI, I think, is has a process for continuing to to identify those victims specifically and to get, you know, a lot of victims, even after they've been specifically identified, don't, you know, through IP addresses, don't want to respond. And so and the nature of the crimes here makes that more likely than even in the minor enough cases. We don't know. I don't have a current update as to who those would be. And we're beyond the rule. Thirty five time period anyway, even subject to reasonable disputes about whether it applies in this context, although we think it does. But there is an ongoing process to identify them. Sure. Sorry, Mr. Hillis was asked, you know, is there a chance? Isn't there a chance that the amount could be a lot higher than 10000 on remand? Don't the cases show that it's such a victim specific case, specific inquiry, that there's also a chance that for some victims it could be a lot lower if the government did want to go through the trouble of bothering victims who don't want to be bothered and prove up restitution amounts. I mean, you cite cases where, you know, the full amount of loss might have been. This is Manziel and Barry, three million, seven point seven five million. But the courts ultimately ordered between 3000 and 7500. So it seems to me, based on the cases that you cite, that the risk really runs both ways. Sure. I take your Honor's point that it has to vary when there's an individualized assessment, which was not done here. That said, those cases are paralleling cases or subsection B cases in 2259 in the sense that total loss figure to the victim was three million. But then the order in those cases was much smaller because the number of people who victimized those victims numbered in the tens of thousands. So it's a simple matter of division, the way that courts have approached those. And it's been subject to many disputes, which I'm sure your Honor's aware of, this mathematical approach under Paroline pre and post. But the point here is that the only person who has victimized any of these victims that we've identified is Mr. Hernandez. So once the total loss amount is identified in these cases, if this were a three million dollar case, for example, there would be no reason, rational reason for the court. And we're not saying it is, but there would be no rational basis for the court, for the district court to say, yeah, sure, but I'm going to order 7000. That's only done as a matter of division across various child pornography defendants. Here, he's the only victimizer. So he would be subject, the only, the restitution statute would require that he would be ordered to pay all of the total damages under the sequence of A, B, and C of subsection A. So that said, it's always possible that a thorough evidence you're hearing could show that one victim had a type of personality that was not susceptible to major psychological trauma from something like this. That's always possible. Facts are facts. If there are other questions, I'm happy to answer. Otherwise, I'm happy to rest on the government's brief. Thank you. Okay, what makes you happier? I'm just happy to be here, Your Honor. Okay. All right. Well, I'm going to give you your two minutes. You asked for two. I did, Judge. I'll begin. So if victims don't want to participate in the restitution process, they don't have to. It just means then there can't be an award for it that's beyond what the minimum would be. And that could be zero or it could be $3,000. It could be $5,000 if a person's not indigent in some cases, that depended. But here, the victims don't want to participate and we should respect that. If I can turn to a couple of waiver points. If based on the PSR, paragraph 66, where the government asks, that says it's going to ask for $66,000, that now establishes waiver. What is the limiting principle going forward when we see PSRs, where somebody doesn't have to object and say, we will oppose the government asking for $10,000. What would be the basis to say we oppose? We would ask for evidence. The government presented none. It doesn't then get the benefit of claiming waiver here. Waiver as well, Rule 35A, the government didn't really advance a procedural basis under Rule 35A to amend the judgment. Its brief doesn't identify any cases that allow 35A to be the basis for an amended judgment. Here, there's a waiver problem for the government. Ultimately, where's the proof of loss? There is none, and that is the government's burden. And then there's Zakari, the district court, and the additional case law that we cited, to the point where there have to be specific findings, a rationale that's demonstrated here. You cannot pick $10,000 out of a hat and say that that's adequate. Some people may have more than that. Some people may have less. This is not meant to be an exercise in expeditiousness. We have due process requirements that apply here. And so far as Lewis goes, proposed conditions of supervised release, which are delineated in the PSR under Flores, that can establish waiver. We have nothing like that. We don't have advanced notice of what the proof is, what the condition is in those cases. Not at all akin to say, the government will ask for $10,000 here. That's a false equivalency. And so Lewis doesn't help the government here. If anything, I would say it helps the defendant, because there's more Lewis than there is here. But with all of that, we ask the court to vacate the remand. Okay. Well, thank you so much to both of you. It's always a pleasure. And the case will be taken under advisement.